UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| RYAN O'DELL, | : |
| | : |
| Plaintiff, | : Civil Action No. 1:22-cv-00309 |
| | : |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| SPX FLOW, INC., MARCUS G. MICHAEL, | : **SECTIONS 14(a) AND 20(a) OF THE** |
| ROBERT F. HULL, JR., MAJDI B. | : **SECURITIES EXCHANGE ACT OF** |
| ABULABAN, ANNE K. ALTMAN, | : **1934** |
| PATRICK D. CAMPBELL, JONATHAN M. | : |
| PRATT, SUZANNE B. ROWLAND, DAVID | : **JURY TRIAL DEMANDED** |
| V. SINGER, and SONYA M. ROBERTS, | : |
| | : |
| Defendants. | |

---

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against SPX Flow, Inc. ("SPX Flow or the "Company") and the members SPX Flow board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of SPX Flow by affiliates of Lone Star Funds ("Lone Star").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on January 11, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy

Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Redwood Star Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of LSF11 Redwood Acquisitions, LLC ("Buyer"), will merge with and into SPX Flow with SPX Flow surviving the merger and becoming a wholly owned subsidiary of Buyer (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each SPX Flow common share issued and outstanding will be converted into the right to receive $86.50 (the "Merger Consideration"). Buyer is an investment vehicle formed by Lone Star.

3. As discussed below, Defendants have asked SPX Flow stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisor of the Company, Morgan Stanley & Co. LLC ("Morgan Stanley") in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to SPX Flow stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of SPX Flow common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Marcus G. Michael has served as a member of the Board since 2015 and as the Chairman since May 2017.

11. Individual Defendant Robert F. Hull, Jr. has served as a member of the Board since 2013 and is the Lead Independent Director.

12. Individual Defendant Majdi B. Abulaban has served as a member of the Board since 2018.

13. Individual Defendant Anne K. Altman has served as a member of the Board since 2015.

14. Individual Defendant Patrick D. Campbell has served as a member of the Board since 2015.

15. Individual Defendant Jonathan M. Pratt has served as a member of the Board since 2020.

16. Individual Defendant Suzanne R. Rowland has served as a member of the Board since 2018.

17. Individual Defendant David V. Singer has served as a member of the Board since 2015.

18. Individual Defendant Sonya M. Roberts has served as a member of the Board since 2021.

19. Defendant SPX Flow is incorporated in Maryland and maintains its principal offices at 13320 Ballantyne Corporate Place. Charlotte, North Carolina 28277. The Company's common stock trades on the New York Stock Exchange under the symbol "FLOW."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

A. **The Proposed Transaction**

22. SPX Flow, together with its subsidiaries, designs, delivers, and services process technology solutions that perform mixing, blending, fluid handling, separation, thermal heat transfer, and other activities. It operates in two segments, Food and Beverage; and Industrial. The Food and Beverage segment offers homogenizers, pumps, valves, separators, and heat exchangers primarily under the APV, Gerstenberg Schroeder, Seital, and Waukesha Cherry-Burrell brands.

4

The Industrial segment offers air dryers, filtration equipment, mixers, pumps, hydraulic technologies, and heat exchangers primarily under the Airpel, APV, Bolting Systems, Bran+Luebbe, Deltech, Hankison, Jemaco, Johnson Pump, LIGHTNIN, POSI LOCK, Power Team, and Stone brands. This segment primarily serves customers in the chemical, air treatment, mining, pharmaceutical, marine, infrastructure construction, general industrial, and water treatment industries. It serves customers through distributors and independent representatives in the United States, China, Germany, Denmark, France, and internationally. The Company was incorporated in 2015 and is headquartered in Charlotte, North Carolina.

23. On December 13, 2021, SPX Flow announced that it had entered into the Proposed Transaction:

> CHARLOTTE, N.C., Dec. 13, 2021 /PRNewswire/ -- SPX FLOW, Inc. (NYSE: FLOW), a leading provider of process solutions for the nutrition, health and industrial markets, announced today it entered into an agreement to be acquired by an affiliate of Lone Star Funds ("Lone Star") in an all-cash transaction valued at $3.8 billion, including the assumption of debt.
>
> The purchase price represents a premium of nearly 40% over SPX FLOW's closing stock price on July 16, 2021, the last trading day prior to the publication of an article in the July 19, 2021, edition of *The Wall Street Journal* stating that the Company received an unsolicited purchase offer.
>
> "We are pleased to have reached this agreement with Lone Star, which is the result of a comprehensive review of alternatives, including a robust sale process, conducted by our Board in consultation with independent advisors," said Robert F. Hull, Jr., Chairman of the SPX FLOW Board of Directors. "As part of the process, SPX FLOW held discussions with multiple strategic and financial parties and evaluated the transaction against the Company's standalone prospects, performance and outlook. We believe this transaction is the right path forward and achieves our goal of maximizing value for SPX FLOW shareholders."
>
> "SPX FLOW has transformed its business and made important progress executing against our strategic plans, and we believe this transaction with Lone Star is an exciting culmination of those efforts

for our shareholders," said Marc Michael, SPX FLOW President and CEO. "In Lone Star, we have a partner that brings additional perspective and expertise to support the continued implementation of our strategic initiatives as we deliver reliable outcomes for customers and provide them the high-quality products and services they expect from us. This transaction is a testament to the achievements of our employees, and I would like to thank them for all they do to make SPX FLOW the premier process solutions company. We look forward to working with Lone Star to complete the transaction and delivering significant, immediate and certain value to our shareholders."

"We are excited about the opportunity to partner with SPX FLOW," said Donald Quintin, President, Lone Star Opportunity Funds. "This acquisition is consistent with Lone Star's strategy to invest in businesses with substantial runway for growth. We have great respect for SPX FLOW's talented employees and their commitment to innovation and serving customers. We look forward to working with Marc and the entire team to help advance SPX FLOW's strategy and capture the opportunities ahead."

**Transaction Details**

The transaction was unanimously approved by the SPX FLOW Board of Directors and is expected to close in H1 2022, subject to receipt of certain regulatory approvals, including expiration or termination of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act, as well as SPX FLOW shareholder approval and other customary closing conditions. The transaction is not subject to a financing condition.

Upon completion of the transaction, SPX FLOW will become a privately held company and SPX FLOW's shares will no longer trade on The New York Stock Exchange.

As a condition to the transaction, SPX FLOW has agreed to suspend payment of its quarterly dividend, effective immediately.

**Advisors**

Morgan Stanley & Co. LLC is serving as exclusive financial advisor to SPX FLOW and Winston & Strawn LLP is serving as its legal advisor. Citi, RBC Capital Markets, LLC, and BofA Securities Inc. are serving as financial advisors to Lone Star, and Gibson, Dunn & Crutcher LLP and Kirkland & Ellis LLP are serving as legal advisors.

* * *

24. The Board has unanimously approved the Proposed Transaction. It is therefore imperative that SPX Flow's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.      The Materially Incomplete and Misleading Proxy Statement**

25. On January 11, 2022, SPX Flow filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

26. The Proxy Statement fails to provide material information concerning financial projections by SPX Flow management and relied upon by Morgan Stanley in their analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board Morgan Stanley with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that SPX Flow management provided to the Board

7

and Morgan Stanley. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metric: Adjusted EBITDA but fails to provide line items used to calculate the metrics and/or a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the

        residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

30. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metric included in the Proxy Statement not misleading.

31. The Proxy Statement must also disclose the unlevered free cash flows that SPX Flow was forecasted to generate from the fourth quarter of calendar year 2021 through calendar year 2025 on a standalone basis, which were used by Morgan Stanley to perform its *Discounted Cash Flow Analysis*.

<u>Omissions and/or Material Misrepresentations Concerning Morgan Stanley's Financial Analysis</u>

32. With respect to Morgan Stanley's *Equity Research Analyst Price Targets* analysis for the Company, the Proxy Statement fails to disclose: (i) the price targets reviewed; (ii) the equity research analysts observed; and (iii) the discount rate used.

33. With respect to Morgan Stanley's *Public Trading Comparables Analysis* for SPX Flow, the Proxy Statement fails to disclose the individual metrics for the companies observed by Morgan Stanley in the analysis.

34. With respect to Morgan Stanley's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement fails to disclose: (i) the unlevered cash flows that SPX Flow was forecasted to generate from the fourth quarter of calendar year 2021 through calendar year 2025 on a standalone basis; (ii) line items used to calculate the unlevered free cash flows of the

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

Company; (ii) the terminal values for the Company; (iii) the inputs and assumptions underlying the use of a range of terminal growth rates from 2.0% to 3.0%; and (iv) the inputs and assumptions underlying the range of discount rates ranging from 7.7% to 9.5%.

35. With respect to Morgan Stanley's *Precedent Transactions Analysis* for the Company, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed by Morgan Stanley in the analysis.

36. With respect to Morgan Stanley's *Precedent Premia Analysis* for the Company, the Proxy Statement fails to disclose the premiums paid for each selected precedent transaction observed in the analysis.

37. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

38. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or

misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

40. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by Morgan Stanley and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

41. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

42. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

43. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

44. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45. The Individual Defendants acted as controlling persons of SPX Flow within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of SPX Flow, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of SPX Flow, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

46. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of SPX Flow, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act

violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

48. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

49. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

51. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with,

consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

   B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

   C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

   D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

   E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 12, 2022           **MELWANI & CHAN LLP**

                   By: /s *Gloria Kui Melwani*
                      Gloria Kui Melwani (GM5661)
                      1180 Avenue of Americas, 8th Fl.
                      New York, NY 10036
                      Telephone: (212) 382-4620
                      Email: gloria@melwanichan.com

                      *Attorneys for Plaintiff*